Anthony Barnes (Bar No. 199048)
Jason Flanders (Bar No. 238007)
Email: amb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
490 43rd Street, Suite 108
Oakland, CA 94609
Phone: (917) 371 - 8293

ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
Email: Colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Telephone: (714) 850-1965

*Attorneys for Plaintiff*
ORANGE COUNTY COASTKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>      Plaintiff,<br><br>   v.<br><br>ALUMINUM PRECISION PRODUCTS, INC., a California corporation,<br><br>      Defendant | **Civil Case No.:** 8:19-cv-00751-PA-(KESx)<br><br>**CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.)** |

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Orange County Coastkeeper and Defendant Aluminum Precision Products, Inc. The entities entering into this Consent Decree are each an individual "Settling Party" or "Party" and collectively "Settling Parties" or "Parties."

## RECITALS

**WHEREAS**, Orange County Coastkeeper ("Plaintiff" or "Coastkeeper") is a non-profit public benefit corporation organized under the laws of the State of California;

**WHEREAS,** Coastkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Orange County from all sources of pollution and degradation;

**WHEREAS**, Defendant Aluminum Precision Products, Inc. (referred to herein as "Defendant" or "APP") owns and operates three industrial manufacturing facilities at the following addresses: 3323 Warner Avenue and 3333 Warner Avenue, Santa Ana, CA 92704 (the "Warner Facility"); 2) 2621 South Susan Street, Santa Ana, CA 92704 (the "Susan Facility");[1] and 3) 502, 516, and 528 E. Alton Avenue, Santa Ana, CA 92707 (the "Alton Facility").

**WHEREAS,** the Warner, Susan and Alton Facilities are herein collectively referred to as "the Facilities";

**WHEREAS**, the Facilities are aluminum forging manufacturing facilities producing precision parts and components primarily for the aerospace and automotive industries with industrial activities including burnishing, etching, forging, pressing, machining and maintenance. The Facilities are categorized under Standard Industrial Classification ("SIC") code 3463—Nonferrous Forgings.

---

[1] The Susan Facility is comprised of six buildings on six separate parcels located at 3209 W. Central Ave, 3210 W. Central Ave, 3132 W. Central Ave, 2621 S. Susan Street, 2631 S. Susan Street, and 3151 W. Adams Street, Santa Ana, CA, 92704.

**WHEREAS**, storm water discharges associated with industrial activity at the Facilities were and are regulated by 1) the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Order No. 97-03-DWQ and Order No. 2014-57-DWQ ("General Permit"); 2) if adopted, by Order No. 20XX-XXX-DWQ ("2018 Permit"); and 3) the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facilities result in discharges of storm water containing pollutants into municipal storm sewers, which drain into waters of the United States and are therefore regulated by the Clean Water Act Sections 301(a) and 402, 33 U.S.C. §§ 1311(a) and 1342;

**WHEREAS**, the General Permit requires all permittees, including APP, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, (3) when necessary, implement additional BMPs to reduce and eliminate discharges necessary to comply with applicable Water Quality Standards ("WQS"), including as of July 1, 2020, compliance with the 2018 Permit's water-quality based numeric effluent limits, and (4) implement a monitoring and reporting program designed to assess compliance with the General Permit;

**WHEREAS**, on February 21, 2019, Plaintiff issued notices of intent to file suit ("60-Day Notices") regarding the Facilities to APP, its registered agent, the Attorney General, the Acting Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the Santa Ana Regional Water

Quality Control Board ("Regional Water Board"), and the Acting Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit at the Facilities;

**WHEREAS**, on April 24, 2019, Coastkeeper filed two complaints against APP in the Central District, Civil Case No. 8:19-cv-00751 (concerning the Warner and Susan Facilities) and Civil Case No. 8-19-cv-00752 (concerning the Alton Facility);

**WHEREAS,** on June 4, 2019, Coastkeeper filed first amended complaints ("FACs") in these actions;

**WHEREAS**, on October 7, 2019, the Court ordered the two actions consolidated under the low number case, Case No. 8:19-cv-00751-R-KES;

**WHEREAS**, on January 6, 2020, by order of the Chief Judge, the Court reassigned case from the calendar of Judge Manuel L. Real to the calendar of Judge Percy Anderson. The case number was changed to reflect the initials of the transferee Judge to read 8:19-cv-00751-PA (KESx).

**WHEREAS**, Plaintiff's FACs alleged violations of the General Permit and CWA for pollutants discharged from the Warner Facility and the Susan Facility to the Santa Ana MS4, which discharges to Greenville Banning Channel, which drains to the Santa Ana River and ultimately the Pacific Ocean and for pollutants discharged from the Alton Facility to the Santa Ana MS4, which discharges to San Diego Creek Reach 1, Upper Newport Bay, Lower Newport Bay and the Pacific Ocean (collectively the "Receiving Waters");

**WHEREAS**, APP denies all allegations in the 60-Day Notices, the Complaints and the FACs and reserves all right and defenses with respect to such allegations and claims;

**WHEREAS**, the Settling Parties agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notices, the Complaints and the FACs without further proceedings; and

**WHEREAS**, all actions taken by the APP pursuant to this Consent Decree shall be made in compliance with all applicable law.

## TERMS

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations took place are located within the Central District;

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4. Coastkeeper has standing to bring this action; and

5. By stipulating to Coastkeeper's standing to bring this action, APP does so only in furtherance of this Consent Decree. APP does not admit or concede any fact alleged by Coastkeeper in the 60-Day Notice Letters, the Complaints or the FACs to support their standing (in either this case or any future litigation).

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Coastkeeper in its 60-Day Notices, the Complaints and the FACs. These objectives include compliance with the provisions of this Consent Decree, compliance with all applicable terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, the terms and conditions of the

General Permit and the 2018 Permit, if applicable, and all applicable sections of the CWA at the Facilities.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. Agency Review of Consent Decree

8. <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice ("DOJ") and the EPA (the "Federal Agencies") within three (3) business days of the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to promptly resolve the issue(s) raised by the Federal Agencies.

9. <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. Effective Date and Term of Consent Decree

11. <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry by the Court.

12. <u>Term & Termination</u>. This Consent Decree shall terminate three (3) years from the Effective Date unless one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of fifteen (15) days of notice by the Settling Parties that invoked Dispute Resolution that the dispute has been fully resolved or an order of the United States District Court resolving the dispute and terminating the Consent Decree.

13.   <u>Early Termination</u>. Notwithstanding Paragraph 12 above, if during the 2020-2021 Reporting Year,[2] storm water samples for each Facility collected in compliance with this Consent Decree demonstrate no more than one (1) Warner, Susan or Alton Storm Exceedance (as those terms are defined in Paragraph 21) of the Numeric Targets set out in Tables 1 or 2 below, and if during the 2021-2022 Reporting Year, there are no Storm Exceedances of the Table 1 and 2 Numeric Targets (provided at least four (4) rain events are sampled during each Reporting Year), this Consent Decree shall terminate on August 1, 2022 as to any Facility meeting that condition. Such termination shall be subject to resolution of any ongoing, unresolved dispute regarding a Facility's compliance with this Consent Decree, in which case the Consent Decree as to that Facility will terminate within fifteen (15) days of notice by the Settling Parties that the dispute has been fully resolved. If all three Facilities meet the conditions for early termination in this paragraph, the Consent Decree shall terminate on August 1, 2022, provided that any outstanding payments under this Consent Decree, including stipulated payments, have previously been made to Coastkeeper. Upon completion of such payments, the Consent Decree will terminate without further notice. If APP ceases industrial operations at its Facilities and files a Notice of Termination ("NOT") under the General Permit prior to the scheduled termination of this Consent Decree, APP shall send Coastkeeper a copy of the proposed NOT concurrently as it is submitted to the Regional Board. Within ten (10) days of the Regional Board's approval of the NOT, APP shall notify Coastkeeper in writing of the approval and remit, within thirty (30) days of providing notice to Coastkeeper, all outstanding payments, including stipulated payments, to Coastkeeper. Upon completion of such payments, if required, this Consent Decree shall terminate without further notice. Similarly, this Consent Decree shall terminate as to any Facility as to which a NOT is filed prior to the scheduled termination of this Consent Decree.

[2] A Reporting Year is defined as July 1 through June 30.

# III. COMMITMENTS OF THE SETTLING PARTIES

## A. Storm Water Pollution Control Best Management Practices

14. <u>Current and Additional Best Management Practices</u>. In addition to maintaining the current BMPs described in the Facilities' SWPPPs, APP shall (1) develop and implement the BMPs identified herein, and (2) develop and implement such additional BMPs as are necessary to comply with the provisions of this Consent Decree and the General Permit.

15. <u>Structural and Non-Structural BMPs for the Facility</u>. Within forty-five days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facilities:

15.1 Warner Facility

At the Warner Facility, APP will cover all inactive dies with heavy-duty canvas tarps and raise dies from pavement on wooden pallets; remove inactive dies from the Facility when the customer approves; finish paving the northeast corner of the property at 3323 W. Warner; and install epoxy sealant in expansion cracks. In addition, APP will install at Outfall 3 (draining the 3323 W. Warner property) a new catch basin and a Mixed Media Filter ("MMF"), comprising a centrifuge to remove particles, a 20-micron cartridge filter containing not less than 700 square feet of filter media and a carbon/mixed media with at least 12 cubic feet of media.

15.2 Susan Facility

At the Susan Facility, APP will steam clean the yard at 3151 Adams; remove inactive dies from the Facility when the customer approves; purchase a vacuum sweeper; move the abrasive cutoff saw from the yard at 3151 Adams to inside a building; move a belt sander in the yard at 3151 Adams to inside a building; cover all metal in the yard at 3151 Adams with heavy-duty canvas tarp material; install biochar-media, or equivalent, downspout filters on downspouts not discharging to an outfall receiving MMF treatment; and,

replace existing CleanWay treatment units in sumps serving Outfalls 3, 4 and 5 with the same type, size, and media specifications as the MMF unit installed at the Warner Facility.

15.3 Alton Facility

At the Alton Facility, APP will, unless the adjoining facility redirects storm water discharges away from the Facility, collect and divert run-on from downspouts from the facility adjoining the west edge of property to discharge off-site; place plastic curtains around three baghouses; remove inactive dies from the Facility when the customer approves; fill sump next to baghouse; and install MMF systems in the existing sumps serving Outfalls 1 and 2 equivalent to those installed at the Warner and Susan Facilities, with the following exceptions: 1) as the first component of the system, prior to the centrifuge, a polymer chemical will be added to the sump to cause coagulation and flocculation of constituents in the storm water, and (2) a 5 µm-P2 filter will be installed as the final component prior to discharge.

**B.    Sampling at the Facilities**

16.    APP shall undertake a monitoring program consistent with the General Permit. During the term of this Consent Decree, Defendant shall collect samples of storm water discharge from Discharge Locations designated as Outfalls 1-5 at the Warner Facility, Outfalls 1-7 at the Susan Facility and Outfalls 1-2 at the Alton Facility. (If any existing Outfalls are consolidated or removed, APP shall notify Coastkeeper pursuant to the notification provisions in Paragraph 56 and shall continue to collect samples at the remaining Outfalls.) APP shall collect storm water samples, if possible, from each Discharge Location at the Facilities from at least four (4) qualified storm events as required by the General Permit (i.e., two Qualifying Storm Events ("QSE") during the first half of the Reporting Year and two QSEs during the second half of the Reporting Year). A QSE, as defined in the General Permit, is a storm that produces a discharge from at least one (1) drainage area and is preceded by forty-eight

(48) hours with no discharge from any drainage area. This requirement shall not apply to the extent that there are not at least four (4) QSEs in a Reporting Year. If, prior to March 1 of a reporting year, APP has collected samples from two (2) or fewer qualifying storm events, APP shall, to the extent feasible, collect samples during as many QSEs as necessary until a minimum of 4 storm events have been sampled for the reporting year. No two (2) samples may be from the same storm event.

17.  Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Tables 1 (for the Warner and Susan Facilities) and 2 (for the Alton Facility), set forth below.

18.  Laboratory and Holding Time. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

19.  Detection Limit. APP shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the Industrial General Permit and Tables 1 and 2 below.

20.  Reporting. APP shall provide complete laboratory results of all samples collected at the Facilities to Coastkeeper within fifteen (15) days of receiving the results.

**C.  Reduction of Pollutants in Discharges**

21.  Numeric Limits and Action Plan Triggers. APP shall develop and implement BMPs to reduce pollutants in storm water at the Facilities to levels at or below those in Table 1 (Warner and Susan Facilities) and Table 2 (Alton Facility). As of the beginning of the 2020-2021 Reporting Year, and for the remainder of the term of this Consent Decree, the Action Plan requirements set forth in Paragraph 22 shall be triggered for each Facility as follows: (A) for the Warner Facility, if the average of all storm water samples discharged and monitored from a QSE reflects an exceedance

of any Numeric Limit in Table 1 ("Warner Storm Exceedance") in two (2) QSEs in a single Reporting Year; (B) for the Susan Facility, if the average of samples discharged and monitored from a QSE at Outfalls 3, 4, 5, 6, and 7 or the average of samples discharged and monitored from a QSE at Outfalls 1 and 2 reflects an exceedance of any Numeric Limit in Table 1 ("Susan Storm Exceedance") in two (2) QSEs in a single Reporting Year, and; (C) for the Alton Facility, if during the 2020-2021 Reporting Year, there are more than two (2) exceedances of Numeric Limits for Copper and Zinc or there are more than five (5) exceedances of the Numeric Limits for the other analytes in Table 2[3]; and for the following Reporting Years until termination of the Consent Decree, there is more than one (1) exceedance of the Numeric Limits for Copper and Zinc or are more than three (3) exceedances for the other analytes in Table 2 ("Alton Storm Exceedance").

**Table 1. Numeric Limits for Storm Water Discharges from the Warner and Susan Facilities**

| Analytes | Values[4] | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2015 EPA Benchmark |
| Nitrate+Nitrite-Nitrogen | 0.68 mg/L | 2015 EPA Benchmark |
| Oil & Grease | 15 mg/L | 2015 EPA Benchmark |
| Zinc | 0.23 mg/L[5] | 2015 EPA Benchmark |
| Copper | 0.0285 mg/L[6] | 2015 EPA Benchmark |
| Iron | 1 mg/L | 2015 EPA Benchmark |
| Aluminum | 0.75 mg/L | 2015 EPA Benchmark |
| pH | 6.5-8.5 s.u. | Basin Plan |

[3] For example, should the Alton Facility have two (2) exceedances of Zinc and one (1) exceedance of Copper (and separately) and/or two (2) exceedances of Iron, three (3) exceedances of Aluminum and one (1) exceedance of Total Suspended Solids, in the 2020-2021 Reporting Year, an Action Plan will be required.
[4] For the Zinc and Copper standards in Table 1 and Table 2, sampling analysis shall be recorded in dissolved metals
[5] Assumes a receiving water hardness of 200-225 mg/L $CaCO_3$.
[6] Assumes a receiving water hardness of 200-225 mg/L $CaCO_3$.

**Table 2. Numeric Limits for Storm Water Discharges from the Alton Facility**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2015 EPA Benchmark |
| Nitrate+Nitrite-Nitrogen | 0.68 mg/L | 2015 EPA Benchmark |
| Oil and Grease | 15 mg/L | 2015 EPA Benchmark |
| Zinc | 0.21 mg/L | Table F.45, 20xx-xxxx-DWQ |
| Copper | 0.027 mg/L | Table F.45, 20xx-xxxx-DWQ |
| Iron | 1.0 mg/L | 2015 EPA Benchmark |
| Aluminum | 0.75 mg/L | 2015 EPA Benchmark |
| pH | 6.5-8.5 s.u. | Basin Plan |

22.    <u>Action Plan for Table 1 or 2 Exceedances</u>. In the event that the requirement to prepare an Action Plan is triggered at any of the Facilities pursuant to Paragraph 21, APP shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the discharge of the contaminant in question ("Action Plan") for that Facility. In any Reporting Year that an Action Plan is required, it shall be submitted seventy-five (75) days from Defendant's receipt of a storm water sample lab report demonstrating a second Storm Exceedance for the Warner Facility and Susan Facility or an Alton Storm Exceedance. In no event will more than one (1) Action Plan and one (1) Action Plan Payment be required for each Facility in any Reporting Year.

22.1    <u>Action Plan Requirements</u>. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Numeric Limit(s) in Table 1 or Table 2; (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting

Year (unless APP submits to Coastkeeper, in writing, an explanation of why implementation cannot occur by that date and providing for an alternative implementation date. In the event of disagreement over such alternative implementation date, the Parties agree to submit to the Dispute Resolution provisions of Section IV). APP shall notify Coastkeeper in writing when the Action Plan has been implemented.

22.2 <u>Action Plan Review</u>. Coastkeeper shall have thirty (30) days upon receipt of APP's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving Coastkeeper's proposed revisions to an Action Plan, APP shall consider each of Coastkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

22.3 <u>Action Plan Payments</u>. APP shall pay Five Thousand Dollars ($5,000) each time an Action Plan is submitted to Coastkeeper. Action Plans will be submitted separately for each Facility requiring an Action Plan. Payments shall be made to "Orange County Coastkeeper" and delivered by overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**D.    Visual Observations**

23.    <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct visual observations during every rain event that produces a discharge at all Outfalls (as set forth in Paragraph 16) at any of the

Facilities, provided that the observations can be conducted in daylight during "Hours of Operation," as that period is defined in each Facility's SWPPP.

24. <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each Outfall at the Facilities.

25. <u>Visual Observations Records</u>. Defendant shall maintain observation records for each Facility to document compliance with Paragraphs 23 and 24 and shall provide Coastkeeper with a copy of those records within twenty-one (21) days of receipt of a written request from Coastkeeper for those records.

26. <u>Employee Training Program</u>. Within forty-five (45) days of the Effective Date, APP shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facilities designated to achieve compliance with the Industrial General Permit and/or this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the Industrial General Permit and this Consent Decree ("Training Program"):

26.1 <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the Industrial General Permit.

26.2 Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 General Permit) familiar with the requirements of this Consent Decree and/or the Industrial General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the General Permit, and the Facilities' SWPPPs, as applicable. All new staff

intended to become Designated Employees shall receive this training before assuming responsibilities for implementing the SWPPPs or undertaking activities covered under this Consent Decree.

26.3   <u>Sampling Training</u>. Defendant shall designate an adequate number of Designated Employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

26.4   <u>Visual Observation Training</u>. APP shall provide training to Designated Employees on how and when to properly conduct visual observations;

26.5   <u>Non-Storm Water Discharge Training</u>. APP shall train an adequate number of Designated Employees at each of the Facilities on the General Permit's prohibition of non-storm water discharges, so that these Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

26.6   <u>Employees.</u> All Designated Employees at the Facilities who have previously participated in the Training Program shall participate in a refresher course annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

26.7   APP shall maintain training records to document compliance with Paragraph 26.1 – 26.6, and shall provide Coastkeeper with a copy of these records within twenty-one (21) days of receipt of a written request.

26.8   <u>Identification of Storm Water Pollution Prevention Team Training Program Updates into SWPPPs</u>. Within thirty (30) days of the Effective Date, APP shall update the SWPPP for each of the Facilities, as required, to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

27.     SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update. Within forty-five (45) days of the Effective Date, APP shall amend each Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree. APP agrees to submit the updated SWPPPs and MIPs to Coastkeeper upon completion for review and comment.

27.1    Review of SWPPPs and/or MIPs. Coastkeeper shall have thirty (30) days from receipt of the amended SWPPPs and/or MIPs to propose any changes. Within thirty (30) days of receiving Coastkeeper's comments and proposed changes to the SWPPPs, APP shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated;

27.2    During the term of this Consent Decree, APP shall revise the SWPPP and MIP for the Facilities if there are any material changes in the operations at any facility, including but not limited to changes in storm water discharge points or BMPs within forty-five (45) days of the changes, which will be subject to Coastkeeper's review and comment as provided in Paragraph 27.1 above.

27.3    The Settling Parties agree to work in good faith to resolve any disputes with respect to the SWPPPs or MIPs, and any remaining disputes will be resolved through timely initiation of the Dispute Resolution procedures in Section IV below.

**E.      Compliance Monitoring and Reporting**

28.     Site Inspections.

28.1    BMP Post-Implementation Inspection: During the first year of the Consent Decree, Coastkeeper may conduct a site inspection to observe each Facility after the implementation of the structural BMPs. This inspection is independent of the annual site inspection but shall be subject to the same terms and conditions as set forth in Paragraph 29.

28.2    <u>Annual Site Inspection</u>: Each year during the life of this Consent Decree, Coastkeeper may conduct one site inspection ("Site Inspection") at each Facility still subject to the Consent Decree per Reporting Year for the purpose of confirming compliance with this Consent Decree and the General Permit. In the event of a dispute between the Settling Parties regarding APP's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Settling Parties' dispute, the Settling Parties agree to meet and confer regarding one additional Site Inspection during the term of the Consent Decree. Coastkeeper shall not unreasonably request, and APP shall not unreasonably deny, a request for one additional Site Inspection.

29.    <u>Conduct of Site Inspections</u>. All Site Inspections shall occur during Operating Hours,[7] and Coastkeeper will provide APP with at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing during Operating Hours or reschedule the Site Inspection for an alternative date during Operating Hours in the event that the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting a Facility in wet weather. Notice will be provided by telephone and electronic mail to the individual(s) designated below in Paragraph 56. During the wet weather inspections, Plaintiff may request that APP collect a sample of industrial storm water discharge from the Facility's designated discharge point(s) referenced in their respective SWPPP, to the extent that such discharges are occurring. APP shall collect the samples and provide them to Coastkeeper, and may keep a split sample for its own use. Coastkeeper's representative(s) may observe the split samples being collected by Defendant's representative. The conduct of Coastkeeper and its representatives during any Site Inspection shall be limited to areas outside of

---

[7] Defined to be 7 a.m. to 4 p.m. Monday-Friday at the Susan and Warner Facilities and 7 a.m. to 3:30 p.m. Monday-Friday at the Alton Facility.

structures and governed by the Access Agreement appended to and incorporated into this Consent Decree as Appendix A.

30.  Document Provision. During the term of this Consent Decree, and with respect to any Facility still subject to the Consent Decree, Defendant shall submit documents to Coastkeeper as follows:

30.1  Defendant shall provide Coastkeeper with a copy of all compliance documents, monitoring and/or sampling data, written communications and/or correspondence, or any documents, in all cases related to storm water quality at the Facilities, that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality, within five (5) business days of submission to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

30.2  Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facilities received by APP from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to Coastkeeper within ten (10) business days of receipt by Defendant. Defendant shall deliver paper copies or email electronic copies of documents to Coastkeeper at the relevant notice address contained below.

31.  Compliance Monitoring. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree in the amount of Thirty Thousand Dollars ($30,000.00). Such payment shall be made payable to "Orange County Coastkeeper" and delivered by overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, within seven (7) days of the Effective Date. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

## F. Environmental Mitigation, Litigation Fees and Costs, Stipulated Payment, and Interest

32. _Environmental Mitigation Project_. To remediate the alleged environmental harms alleged in the 60-day Notice Letters, the Complaints and the FACs, Defendant agrees to make a payment of Thirty Thousand Dollars ($30,000) to Rose Foundation for Communities & The Environment. The payment in full shall be made within thirty (30) days of the Effective Date and made payable to the "Rose Foundation for Communities & The Environment" and delivered by overnight delivery to: Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Defendant shall provide Coastkeeper with a copy of such payment.

33. _Coastkeeper's Fees and Costs_. Defendant agrees to pay a total of One Hundred Ninety-Eight Thousand Dollars ($198,000) to Coastkeeper to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuits, and negotiating a resolution of this matter. The payment in full shall be made within seven (7) days of receipt of notice of entry of the Consent Decree made payable to "Orange County Coastkeeper" and delivered by overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

34. _Stipulated Payment_: In the event Coastkeeper believes APP has missed any deadline specified in the Consent Decree, Coastkeeper shall provide written notice to APP of such missed deadline. Defendant shall have five (5) business days from receipt of such notice to respond to Coastkeeper and, if necessary, cure such delinquency. If Defendant fails to respond and, if necessary, cure such alleged delinquency within five (5) days of receipt of Coastkeeper's notice, then APP shall make a stipulated payment of One Thousand Dollars ($1,000.00) for the missed deadline identified in Coastkeeper's notice. Payment made pursuant to this paragraph shall be made within thirty (30) days and to the same recipient in paragraph 32 of this Consent Decree.

35.     Interest on Late Payments: Defendant shall pay interest on any payments, fees, or costs owed to Coastkeeper under this Consent Decree that Coastkeeper has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed pursuant to the rate for interest for civil judgments as set forth in 28 U.S.C. § 1961. Interest on late payments shall be made payable to Coastkeeper and sent to the address listed in paragraph below.

## IV.   Dispute Resolution

36.     <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice. The Settling Parties may mutually elect to extend this period in an effort to resolve the dispute without further proceedings.

37.     <u>Right to Enforcement Action</u>. If the Parties cannot resolve the dispute within thirty (30) days of (or longer, if the Parties elected to extend) the meet and confer described in Paragraph 36, either Party may file an action in the United States District Court for the Central District of California to enforce provisions in the Consent Decree that are in dispute without the need issue another 60-Day Notice letter.

38.     In resolving any dispute arising from this Consent Decree that must be resolved by bringing an enforcement action in the Central District of California, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.  Mutual Release of Liability and Covenant Not to Sue

39.  <u>Coastkeeper's Waiver and Release of APP</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives (collectively, the "Coastkeeper Representatives") hereby releases and covenants not to sue APP, and each of its current and former parents, subsidiaries, affiliates, officers, directors, members, affiliates, employees, shareholders, agents, attorneys, consultants and representatives, and each of their predecessors, successors and assigns (collectively, "APP Representatives") from and on any and all claims which are alleged or which could have been alleged, or arise from or relate to the facts and allegations alleged or which could have been alleged, in the 60-day Notices, the Complaints or the FACs, up to and including the date this Consent Decree is fully terminated, including but not limited to all claims for injunctive relief, penalties, fees (including fees of attorneys, experts, and all other fees), costs, expenses or any other sum incurred or claimed, and all such claims are hereby waived. The provisions of this paragraph shall survive the expiration or termination of this Consent Decree.

40.  <u>APP's Waiver and Release of Coastkeeper</u>. In consideration of the above, upon the Effective Date of this Consent Decree, APP, on its own behalf and on behalf of the APP Representatives, releases and covenants not to sue Coastkeeper and the Coastkeeper Representatives from and on any and all claims which are alleged or which could have been alleged, or arise from or relate to the facts and allegations alleged or which could have been alleged, in the 60-day Notices, the Complaints or the FACs, up to and including the date this Consent Decree is fully terminated, including but not limited to all claims for injunctive relief, penalties, fees (including fees of attorneys, experts, and all other fees), costs, expenses or any other sum incurred or claimed, and all such claims are hereby waived. The provisions of this paragraph shall survive the expiration or termination of this Consent Decree.

41.  <u>Civil Code Section 1542 Release</u>. The Settling Parties acknowledge that they are familiar with Section 1542 of the California Civil Code, which provides:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

The Settling Parties hereby waive and relinquish any rights or benefits they may have, known or unknown, under California Civil Code Section 1542 with respect to any other claims that they may have, or which could have been asserted, against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letters, the Complaints or the FACs, or for any violation of law at the Facilities. The provisions of this paragraph shall survive the expiration or termination of this Consent Decree

## VI.  Miscellaneous Provisions

42.  <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. APP maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

43.  <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Copies of original signature transmitted by electronic mail in .pdf format shall be deemed to be originally executed counterparts of this Consent Decree.

44.  <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that he is fully authorized by the party whom he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by electronic mail shall be deemed binding.

45.    Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the General Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

46.    Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

47.    Integration Clause. This is an integrated Consent Decree. This Consent Decree (and Appendix A hereto) is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48.    Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49.    Choice of Law. The laws of the United States shall govern this Consent Decree.

50.    Diligence. APP shall diligently file and pursue all required permit applications required for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

51.    Effect of Consent Decree. Compliance with this Consent Decree does not mean that Plaintiff necessarily agrees that APP is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation not addressed by the Consent Decree.

52.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

53.  <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing to the other Settling Party at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

54.  <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

55.  <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, lightning, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to force majeure as defined in this paragraph

shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

56. **Communication to Coastkeeper/Notices/Correspondence:** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Coastkeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the email addresses listed below or, if electronic mail transmission is not feasible, via express delivery service with return receipt or by hand delivery to the following address:

> Orange County Coastkeeper
> Attention: Colin Kelly
> 3151 Airway Avenue, Suite F-110
> Costa Mesa, California 92626
> E-mail: colin@coastkeeper.org

Unless requested otherwise by APP, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to APP pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission, read receipt requested, to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by express delivery with return receipt or by hand delivery to the addresses below:

For the Warner and Susan Facilities:

> Aluminum Precision Products, Inc.
> Attention: Ron Awrey, Plant Engineer
> 3333 W. Warner Ave.
> Santa Ana, CA 92704
> Email: rawrey@aluminumprecision.com

For the Alton Facility:

> Aluminum Precision Products, Inc.
> Attention: Mark Warner, Maintenance Supervisor
> 502 E. Alton Ave.

Santa Ana CA 92707
Email: mwarner@aluminumprecision.com

And in both cases to:

Aluminum Precision Products, Inc.
Attention: Roark Keeler, Corporate Secretary
3333 W. Warner Ave.
Santa Ana, CA 92704
Email: rkeeler@aluminumprecision.com

Howard Gest
David W. Burhenn
Burhenn & Gest LLP
624 South Grand Avenue
Suite 2200
Los Angeles, CA 90017-3321
Email: hgest@burhenngest.com
        dburhenn@burhenngest.com

57.    Notifications of communications shall be deemed received at time of delivery, provided there is evidence to show receipt by the receiving party. Any change of notice recipients or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the DOJ or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

Dated: _____March 26_____, 2020          By: _____

                                              Garry Brown
                                              Orange County Coastkeeper


Dated: _____, 2020          By: _____

                                              Roark Keeler
                                              Corporate Secretary
                                              Aluminum Precision Products, Inc.


APPROVED AS TO FORM

                                         AQUA TERRA AERIS LAW GROUP


Dated: March 26, 2020                    By: _____

                                              Anthony M. Barnes
                                              Attorney for Plaintiff


                                         BURHENN & GEST LLP


Dated: _____, 2020          By:_____

                                              David W. Burhenn
                                              Attorney for Defendant

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

Dated: _____, 2020

By: _____
Garry Brown
Orange County Coastkeeper

Dated: March 26, 2020

By: _____
Roark Keeler
Corporate Secretary
Aluminum Precision Products, Inc.

APPROVED AS TO FORM

AQUA TERRA AERIS LAW GROUP

Dated: March 26, 2020

By: _____
Anthony M. Barnes
Attorney for Plaintiff

BURHENN & GEST LLP

Dated: March 26, 2020

By: _____
David W. Burhenn
Attorney for Defendant

This Court declines to retain jurisdiction of the Consent Decree or this action for any purpose, whether necessary or not.

IT IS SO ORDERED

Dated March 27, 2020

_____
United States District Judge

**IT IS SO ORDERED.**   **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


Dated: _____, 2020          _____

                                           Hon. Percy Anderson
                                           United States District Judge